IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KERRY A. WASHAM,                :

    Plaintiff,              :

vs.                             :         CA 16-00221-C

NANCY A. BERRYHILL,             :
Acting Commissioner of          :
Social Security,[1]             :

    Defendant.              :

## **MEMORANDUM OPINION AND ORDER**

Social Security Claimant/Plaintiff Kerry A. Washam brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security (the "Commissioner") denying his applications for supplemental security income ("SSI") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 13 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

---

[1] Nancy A Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Fed. R. Civ. P., Berryhill is substituted for Carolyn W. Covin as the proper defendant in this case.

1

Upon consideration of the briefs of the parties, (Docs. 9-10), the administrative record, (Doc. 8), (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"), and the arguments presented during the hearing held on February 16, 2017, it is determined that the Commissioner's decision is due to be **REVERSED** and **REMANDED** for further proceedings consistent with this decision.[2]

## I. Background

Washam was born on March 22, 1993, (R. 207 [SSA Ex. 8E]). The highest grade of school Washam attained was eleventh grade at Leflore Magnet High School in Mobile, Alabama, and while there, he attended special education classes. (R. 174 [SSA Ex. 2E]). Washam was employed from January 2011 to June 2012 as a stocker and cashier at a store and from June 2012 to February 2013 as a dish washer at a restaurant, (R. 175 [SSA Ex. 2E]), and also was employed as a brick mason and at a nursery, (R. 40).

Washam filed applications for SSI [3] with the Social Security Administration (the "SSA"), on February 25, 2013. (R. 15). In Washam's

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 13 & 14 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3] "SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)." *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

application, he alleged disability beginning on February 20, 2013.[4] (R. 15). After Washam's claim was denied, he requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on July 8, 2014. (R. 15). On October 14, 2014, the ALJ issued an unfavorable decision on Washam's claims, finding him "not disabled" under sections 223(d) and 1614(a)(3)(A) of the Social Security Act. (R. 15-25).

Washam requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review. (R. 8-10). The Appeals Council denied Washam's request for review on March 23, 2016, which made the ALJ's the final decision of the Commissioner. (R. 1-6). On May 19, 2016, Washam filed this action pursuant to § 405(g)[5] and § 1383(c)(3)[6] to review the final decision of the Commissioner. (Doc. 1, ¶ 4).

## II. Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is

---

[4] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202-03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[5] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow." 42 U.S.C. § 405(g).

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. 1383(c)(3).

3

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing

4

*MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

### III. Claims on Judicial Review

1. "The [ALJ] committed reversible error in violation of Social

Security Ruling 96-6p in not finding Plaintiff disabled under Listing 12.05(D)." (Doc. 9, at 1).

2. "The [ALJ] reversibly erred in failing to ask the Vocational Expert a hypothetical question that encompassed all of the Plaintiff's mental and physical limitations in violation of *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)." (Doc. 9, at 2).

### IV. <u>Analysis</u>

"At the first step, the ALJ must consider the claimant's current working situation. If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'" *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b)). "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step." *Phillips*, 357 F.3d at 1237. At the first step, the ALJ determined that Washam had "not engaged in substantial gainful activity since February 25, 2013, the application date." (R. 17). The ALJ noted that Washam "worked after the application date but this work activity did not rise to the level of substantial gainful activity." (R. 17).

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the

6

claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined that Washam had the following severe impairment: "borderline intellectual functioning." (R. 17).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Washam "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R. 17).

> At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the

case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the fourth step, the ALJ assessed that Washam had the RFC:

[T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: he has the ability to understand and remember short and simple instructions. He can attend for short periods. Changes in the work setting should be gradual.

(R. 18). The ALJ determined Washam is "capable of performing all of his past relevant work." (R. 20). Accordingly, the ALJ found that Washam "has not been under a disability, as defined in the Social Security Act, from February 23, 2013, through the date of [the ALJ's] decision." (R. 22).

### A. Claim 1

. . . The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments

contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). To "equal a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (footnote omitted).

Washam argues the ALJ reversibly erred when he did not consider whether Washam met Listing 12.05(D).[7] (Doc. 9, at 2-3). Listing 12.05 is as follows:

> 12.05 *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidence by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;

---

[7] The ALJ determined Washam's mental impairment did not "meet or medically equal the criteria of [L]isting 12.04" and considered whether the paragraph B criteria were satisfied. (R. 17).

9

OR

    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. 404, Subpart P, Appendix I, § 12.05 (2015), *amended by* 81 F.R. 66138-01 (2016). Washam argues he meets Listing 12.05 because he was "given a Full IQ score of 63 by both Dr. Carney and Dr. Starkey, and [his] mother spoke of [his] difficulties in his completion of daily activities," and his mother stated he "has been a slow learner his entire life with her always having to keep him on task and focused on the information being presented" as well as he "does not follow through on instructions, fails to finish schoolwork, has difficulty organizing tasks, and is often forgetful about daily activities." (Doc. 9, at 4).

In order to make a finding of mental retardation, an ALJ is required to take into account the results of intelligence tests and medical reports, and, then, compare those results with daily activities and behavior to determine consistency. *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("The

listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded."); *see also Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental retardation based *solely* upon the results of a standardized intelligence test in its determination of mental retardation.").

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240. *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished). However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

Washam was administered two IQ tests. (R. 251-63 [SSA Ex. 4F]; R. 277-81 [SSA Ex. 6F]). On June 17, 2013, Pamela Starkey, Psy. D., tested Washam for mental retardation. (R. 277-81 [SSA Ex. 6F]). Dr. Starkey determined Washam's full scale IQ to be 63, and she stated the results of the test "may underestimate [Washam's] true ability due to attention/concentration problems (a prior ADHD diagnosis was reported)"[8] and she felt Washam was in the "Mild Mental Retardation range." (R. 279 [SSA Ex. 6F]). The ALJ assigned "significant weight" to Dr. Starkey's report. (R. 20). On June 11,2013, John W. Davis, Ph. D., performed a consultative mental examination of Washam. (R. 258-63 [SSA Ex. 4F]). Dr. Davis found Washam had a full scale IQ of 63, which would have placed Washam's overall level of functioning in the "mild range of mental retardation." (R. 261 [SSA Ex. 4F]). Additionally, Dr. Davis found Washam's range of functioning was estimated to be in the "borderline area," (R. 261 [SSA Ex. 4F]), and diagnosed Washam with "Borderline Intellectual Functioning," (R. 262 [SSA Ex. 4F]). However, Dr. Davis stated he felt the results were "an underestimation of [Washam's] ability for unknown reasons," Washam "did not seem to put forth his best efforts," and he noticed Washam made "strong efforts of malingering." (R. 262 [SSA Ex. 4F]). Dr. Davis concluded he would "retest if

---

[8] Further, Dr. Starkey stated "it is difficult to distinguish between attention/concentration problems resulting from ADHD versus attention/concentration problems resulting from Mild Mental Retardation." (R. 279 [SSA Ex. 6F]).

12

[Washam] can become more motivated to put forth a genuine and better effort." (R. 263 [SSA Ex. 4F]). The ALJ assigned "significant weight" to the Dr. Davis's report. (R. 19). The opinions of Drs. Starkey and Davis reflect their concern that the full scale IQ results they obtained were an underestimation of Washam's ability. (R. 262 [SSA Ex. 4F]; R. 279 [SSA Ex. 6F]).

On May 18, 2013, Jack C. Carney, Ph. D., performed an adult mental examination of Washam. (R. 252-56 [SSA Ex. 3F]). Dr. Carney concluded that Washam functioned in the "Mental Retardation range of intelligence" based on an interview and a mental status examination. (R. 255 [SSA Ex. 3F]). Dr. Carney was provided with records by Disability Determination Service ("DDS") that suggested Washam's full scale IQ was "71[,] which is in the Borderline Range of functioning." (R. 255 [SSA Ex. 3F]). Based on Washam's low achievement scores, Dr. Carney opined Washam functioned in the "Mental Retardation range on a daily basis." (R. 255 [SSA Ex. 3F]). Dr. Carney did not perform a full scale IQ test and concluded Washam performed at a lower level than opined by Drs. Starkey and Davis, who performed full scale IQ tests and concluded Washam performed at a higher level than opined by Dr. Carney. (*Compare* R. 255 [SSA Ex. 3F] *with* R. 279 [SSA Ex. 6F] & R. 261 [SSA Ex. 4F]). The ALJ assigned "significant weight" to Dr. Carney's report but assigned no weight to Dr. Carney's statement that Washam's prognosis was not favorable. (R. 19-20).

Without determining whether there was substantial evidence to show Washam had a full scale IQ of 60 through 70, Washam must have had at least two of the following in order to meet listing 12.05D: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. 404, Subpart P, Appendix I, § 12.05D. This additional criteria is mirrored in the criteria required to meet listing 12.04B, *compare* 20 C.F.R. 404, Subpart P, Appendix I, § 12.04B *with* 20 C.F.R. 404, Subpart P, Appendix I, § 12.05D, under which the ALJ evaluated Washam, (R. 17). The ALJ determined Washam had "mild restrictions" in his activities of daily living; "mild difficulties" in social functioning; "moderate difficulties" with concentration, persistence, or pace; and had not experienced episodes of decompensation of extended duration. (R. 18). Therefore, the ALJ concluded Washam did not meet the criteria of listing 12.04B.

Washam argues that his mother, Karen Washam, stated she is "concerned for [Washam]'s ability to learn, stay focused, and function independent;" "[Washam] has been a slow learned his entire life with her always having to keep him on task and focused on the information being presented;" and "[Washam] does not follow through on instructions, fails to finish schoolwork, has difficulty organizing tasks, and is often forgetful about daily activities." (Doc. 9, at 4). As to activities of daily living the ALJ noted

14

Washam could care for his pets including walking them, do yard work including mowing the yard, care for his personal needs, prepare simple meals, launder, vacuum, wash dishes, dust, mop, and wash cars. (R. 18; R. 36; & R. 189-91 [SSA Ex. 5E]). As to social functioning, the ALJ noted Washam could shop in stores for food, clothing, and personal items; play basketball; talk to friends on Facebook; play video games; and regularly attended social groups. (R. 18; R. 36; & R. 192-93 [SSA Ex. 5E]). As to concentration, persistence, or pace, the ALJ noted Washam stated he does not need special reminders to take care of his personal needs and grooming, and he was able to pay bills, count change, and complete a money order. (R. 18 & R. 190 & 192 [SSA Ex. 5E]). Finally, the ALJ noted there was no evidence of repeated episodes of decompensation of extended duration. (R. 18; *see* R. 1-292).

After a review of the whole record, it is determined that the ALJ's finding that Washam did not meet the criteria of listing 12.04B, which were required to meet listing 12.05D, is supported by substantial evidence, and Washam has failed to show that he met the criteria of listing 12.05D. Accordingly, reversal of the Secretary's decision based Washam's assertion of error in Claim 1 is unwarranted.

### B.    Claim 2

> An ALJ determines whether a claimant has the ability to adjust to other work in the national economy by applying the Medical Vocational Guidelines or by obtaining a VE's testimony. *Phillips*[ ], 357 F.3d [at] 1239-40 [ ].  "In order for a VE's

testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones* [*v. Apfel*], 190 F.3d [1224,] 1229[ (11th Cir. 1999)]. "Where the hypothetical question posed by the ALJ does not comprehensively describe the claimaint's impairments, the ALJ's denial of DIB or SSI, if based significantly on the VE's testimony, is not supported by substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985). An ALJ's errors in conducting the five step evaluation process may be harmless if they do not prejudice the claimant. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

*Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 72 (11th Cir. 2012).

The ALJ determined Washam had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he has the ability to understand and remember short and simple instructions. He can attend for short periods. Changes in the work setting should be gradual." (R. 18). At the oral hearing, the ALJ posed to the VE the following hypothetical:

> Assume I find a hypothetical individual the same age as [ ] Washam and the same educational level and vocational expert. And assume further I find the following additional limitations: if this hypothetical individual can perform a full range of heavy work, with no postural limitations, no manipulative limitations, no environmental limitations, and mental limitations would be less than a high school education, given those limitations, in your opinion, would this hypothetical personal be able to perform any of the work which [ ] Washam previously performed?

(R. 42-43). At Step Two, the ALJ found Washam had the severe impairment of borderline intellectual functioning, (R. 17), which impairment was not comprehensively described by the ALJ in his hypothetical question to the VE, (*see* R. 42-43), and upon whose testimony he determined, at Step Four,

16

Washam was capable of performing all of his past relevant work, (R. 20).[9] It cannot be assumed the VE's answer would have been the same if the ALJ instructed her to consider Washam's severe impairment, thus, the ALJ's finding Washam could perform all of his past relevant work was not supported by substantial evidence.

Accordingly, Washam's assertions of error in Claim 2 are sufficient to have this action reversed and remanded for further consideration.

## V. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g),[10] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991), for further proceedings consistent with this decision. The

---

[9] Indeed, the ALJ stated in his opinion:

> The [ALJ] recognizes that the claimant's representative posed hypotheticals to the vocational expert indicating the claimant would need close supervision for the first 1-3 months of work; hands on supervision; instructions on how to do the job and a sheltered work environment to which the [VE] testified the claimant could do his past work and the other work cited in the hypothetical.

(R. 22; *see* R. 43-45). However, the VE testified, in response to Washam's attorney's hypotheticals, Washam would not be able to perform past relevant work or any other work. (R. 45).

[10] Although the plaintiff's application is this case is solely for SSI benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 112 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 12th day of July 2017.

                            s/WILLIAM E. CASSADY
                            **UNITED STATES MAGISTRATE JUDGE**